IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ESTATE OF GINA FOLKES-LINDSEY BY AND THROUGH ADMINISTRATOR VERNON LEE LOUIS FOLKES, JR.**<br>307 Adams Drive<br>Coatesville, PA 19320<br><br>v.<br><br>**AVENTURA AT PEMBROOKE, LLC**<br>1105 East County Line Road<br>Suite 207<br>Lakewood, NJ 08701<br><br>And<br><br>**AVENTURA HEALTH GROUP LLC**<br>1575 50th Street<br>Suite 201<br>Brooklyn, NY 11219<br><br>And<br><br>**CPP SENIOR HOLDINGS LLC**<br>1105 East County Line Road<br>Suite 207<br>Lakewood, NJ 08701<br><br><br>And<br><br>**MARK KAZSIRER**<br>1105 East County Line Road<br>Suite 207<br>Lakewood, NJ 0870 | **NO.** 2:25-cv-4398<br><br><br><br>**JURY TRIAL DEMANDED** |

CIVIL COMPLAINT
<u>GENERAL AVERMENTS</u>

1.       Plaintiff, ESTATE OF GINA FOLKES-LINDSEY BY AND THROUGH

ADMINISTRATOR VERNON LEE LOUIS FOLKES,  (hereinafter referred to as "Plaintiffs"),

has an address of 1307 Adams Drive Coatesville, PA 19320.

2.       Defendant, AVENTURA AT PEMBROOKE, LLC (hereinafter referred to as

"AAP") is a limited liability corporation duly organized under the laws of Pennsylvania, licensed

to conduct and transact business within the Commonwealth of Pennsylvania, and has a principal

address of 1105 East County Line Road, Suite 207, Lakewood, NJ 08701,  and at all times

relevant owned, operated, managed and/or otherwise oversaw and/or held a license to operate a

skilled nursing facility at a location of 1130 West Chester Pike West Chester, PA 19382 known

as Aventura at Pembrooke ("Facility").

3.       Upon information and belief, AAP had complete authority and discretion to

manage the operations and affairs of the Facility, and to make all decisions regarding the

business of the Facility, and had authority, rights, and powers in the management of the Facility

to do any and all other acts and things to effectuate operating the Facility, and withheld capital

contributions vital to run the Facility, took excessive distributions that drained all of the money

from the defendants and the Facility such that the result was the Facility had no money to

operate, the "skilled" nursing care was poor and the patients, including Plaintiff, were harmed

and died.

4.       Defendant, AVENTURA HEALTH GROUP LLC (hereinafter referred to as

"AHG") is a limited liability corporation duly organized under the laws of Pennsylvania,

licensed to conduct and transact business within the Commonwealth of Pennsylvania, and has a

principal address of 1575 50th Street, Suite 201, Brooklyn, NY 11219,  and at all times relevant

owned, operated, managed and/or otherwise oversaw and/or held a license to operate a skilled

nursing facility at a location of 1130 West Chester Pike West Chester, PA 19382 known as

Aventura at Pembrooke ("Facility").

      5.     Upon information and belief, AHG had complete authority and discretion to

manage the operations and affairs of the Facility, and to make all decisions regarding the

business of the Facility, and had authority, rights, and powers in the management of the Facility

to do any and all other acts and things to effectuate operating the Facility, and withheld capital

contributions vital to run the Facility, took excessive distributions that drained all of the money

from the defendants and the Facility such that the result was the Facility had no money to

operate, the "skilled" nursing care was poor and the patients, including Plaintiff, were harmed

and died.

      6.     Defendant, **CPP SENIOR HOLDINGS, LLC** (hereinafter referred to as  "CCP")

is a limited liability corporation duly organized under the laws of Delaware, licensed to conduct

and transact business within the Commonwealth of Pennsylvania, and has a principal address of

1105 East County Line Road, Suite 207, Lakewood, NJ 08701,  and at all times relevant owned,

operated, managed and/or otherwise oversaw and/or held a license to operate a skilled nursing

facility at a location of 1130 West Chester Pike West Chester, PA 19382 known as Aventura at

Pembrooke ("Facility").

      7.     Upon information and belief, CCP had complete authority and discretion to

manage the operations and affairs of the Facility, and to make all decisions regarding the

business of the Facility, and had authority, rights, and powers in the management of the Facility

to do any and all other acts and things to effectuate operating the Facility, and withheld capital

contributions vital to run the Facility, took excessive distributions that drained all of the money

from the defendants and the Facility such that the result was the Facility had no money to

operate, the "skilled" nursing care was poor and the patients, including Plaintiff, were harmed and died.

8.      Defendant, **MARK KAZSIRER** (hereinafter referred to as  "**KAZSIRER**") is an adult individual with an address for service in the above captioned,  and at all times relevant owned, operated, managed and/or otherwise oversaw a skilled nursing facility at a location of 1130 West Chester Pike West Chester, PA 19382 known as Aventura at Pembrooke ("Facility").

9.      Upon information and belief, Kazsirer had complete authority and discretion to manage the operations and affairs of the Facility, and to make all decisions regarding the business of the Facility, and had authority, rights, and powers in the management of the Facility to do any and all other acts and things to effectuate operating the Facility, and withheld capital contributions vital to run the Facility, took excessive distributions that drained all of the money from the defendants and the Facility such that the result was the Facility had no money to operate, the "skilled" nursing care was poor and the patients, including Plaintiff, were harmed and died.

10.      This court has subject matter jurisdiction pursuant to 28 U.S. Code § 1332 (diversity jurisdiction); the amount in controversy exceeds $75,000.00. Venue is also properly laid in this District as the events giving rise to Plaintiff's claims occurred within this District.

11.      At all times material hereto, Defendants acted or failed to act by and through their agents, servants, workmen and/or employees who were then and there acting within the scope of their authority and course of their employment with Defendants, in furtherance of Defendants' businesses and on behalf of Defendants. Plaintiffs further assert that said agents were actual and ostensible. Said agents, servants, workmen and/or employees were those responsible for Plaintiff's care while she was a patient of Defendants, and the names are known to all

Defendants and will be discovered during the course of discovery.

12.     Plaintiff died from necrotizing fasciitis and sepsis due to a decubitus ulcer, failure to thrive and pneumonia all of which was caused by the actions and inactions of all defendants.

13.     Plaintiff was admitted to Defendants' Facility on or about October 28, 2022 at which time she had no pressure ulcer injuries and/or wounds on her body.

14.     During Plaintiff's admission to the Facility, due to the actions and inactions of Defendants, Plaintiff was caused to develop new and/or worsening wounds and pressure injuries including at the sacrum, necrotizing fasciitis, infection, sepsis, all of which caused her death.

15.     On 7/28/23 Plaintiff's sister visited to find her unresponsive.

16.     Defendants' nurse was unconcerned and said she was "relaxing for the evening," completely ignoring her need for medical attention as she was clearly dying from an infection.

17.      On or about July 29, 2023, Plaintiff was admitted to Chester County Hospital.

18.     **Plaintiff had a sacral wound the size of a fist and the wound was down to the bone.**

19.     On or about August 2, 2023, Plaintiff died as a result of injuries caused by defendants' actions and inactions, negligence, carelessness and recklessness as it relates to Plaintiff.

20.     Plaintiff was 56 years old at her death.

21.     During her admission to the Facility, Plaintiff, a result of the negligence, carelessness and recklessness of all defendants, was caused to develop new and worsening pressure ulcer injuries and wounds on her body, including an ***infected and necrotic stage IV sacral wound so big you could put your fist into it, extending all the way down to the bone,*** pictured below, necrotizing fasciitis and ***sepsis*** and suffered an ***early death*** because of this.

Scan (below)



22.    All Defendants **knew** of and/or were aware of the negligent, careless and reckless

actions/inactions of its employees/agents/servants as set forth herein as it relates to the care, and

lack thereof, Plaintiff received while she was their patient and nevertheless **allowed** those

acts/inactions to occur in complete and reckless disregard and indifference to her health, wellbeing and life.

23.     **Defendants and their staff, including the Director of Nursing and Nursing Home Administrator, <u>ignored the gaping hole in her sacrum that extended down to the bone</u>, and ignored the requests for medical treatment from Plaintiff and her family, <u>refusing</u> to treat the pressure wounds even though <u>defendants knew and/or should have known</u>, that if they continued to neglect her and failed treat the wounds,  the wounds would grow in size, deteriorate, become infected down to her bone, and <u>t</u>hat she would <u>die</u> from the wounds and the resulting necrosis and infections, which she in fact did.**

24.     **Defendants had <u>substandard policies, practices and procedures</u> in place to prevent the wounds, assess the wounds, treat the wounds, prevention infection, assess infection and treat infection, and oversee staff who should have been doing all of this, and as a direct result Plaintiff, developed a painful and infected stage IV sacral wound with osteomyelitis that extended down to her bone and killed her.**

25.     **Defendants <u>failed to ensure their staff was following policies, practices and procedures</u> and as a direct result Plaintiff, developed a painful, infected necrotic sacral wound, necrotizing fasciitis, infection, sepsis and died from all of this.**

26.     **All defendants acted with reckless indifference to the rights and wellbeing of Plaintiff.**

27.     **All Defendants' conduct, outlined in the allegations contained in this complaint, amounts to conduct that is both negligent and with reckless indifference to the rights of Plaintiff and in conscious disregard of those rights owed to Plaintiff.**

28.     **All Defendants' conduct warrants the imposition of punitive damages**

because Defendants knew, should have known, or had reason to know of, facts which create a high degree of risk of physical harm to Plaintiff, and deliberately proceeded to act, or to fail to act, in conscious disregard of, or indifference to, that high risk. There was a conscious disregard for their duties, at least in part, if not in full.

29.    **Defendants, who are in the skilled nursing business, <u>knew or should have known</u> that it is vital to prevent pressure ulcer formation and profession because if you do not then people get huge, gaping, open wounds on their body that become infected, and the infection causes sepsis, and spreads throughout the body, organs shut down, the body shuts down and people die, like Plaintiff did.**

30.    The care that all Defendants and/or their servants and/or employees exercised and exhibited in regard to Plaintiff fell outside acceptable, professional, and healthcare safety standards and practices.

31.    All Defendants, jointly and/or severally, undertook and/or assumed a duty to Plaintiff to render reasonable, proper, adequate, prompt medical care and to avoid harm to her, which all Defendants breached.

32.    Defendants owed Plaintiff a duty to possess and exercise that degree of professional skill, care, and knowledge ordinarily possessed and exercised by and/or required of practitioners within the health care profession and/or within their field of specialization.

33.    At all times material hereto, Defendants remained vicariously liable for the acts and/or omissions of any and all professionals associated with Plaintiff's care.

34.    In the alternative, all Defendants were responsible for proper hiring, training and supervision of all employees/agents/workman/professionals in their employ, and any group affiliated with, and to keep patients from harm, and remains vicariously liable for the acts and/or

omissions of any and all professionals associated with Plaintiff's care.

35.     Defendants owed Plaintiff a duty to train, employ and retain on their staff professionals who possess and exercise that degree of professional skill, care and knowledge ordinarily possessed and exercised by and/or required of practitioners within the health care profession and/or within their field of specialization.

36.     The care that Defendants and/or their servants and/or employees exercised and exhibited in regard to Plaintiff fell outside acceptable, professional, and healthcare safety standards and practices.

37.     While a patient of Defendants , Plaintiff did suffer serious and permanent injuries as set forth herein resulting in Plaintiffs' injuries that form the basis for this action.

38.     Defendants, jointly and/or severally, undertook and/or assumed a duty to Plaintiff to render reasonable, proper, adequate, prompt medical care and to avoid harm to her, which Defendants breached.

39.     The aforesaid injuries were due solely to the negligence of Defendants, acting as aforesaid, and were due in no manner whatsoever to any act or failure to act on the part of the Plaintiff.

## COUNT I
## PLAINTIFF V. DEFENDANT AAP
## PROFESSIONAL NEGLIGENCE

40.     Plaintiff incorporates by reference hereto, all of the allegations contained in the General Averments as if they were set forth at length herein.

41.     The negligence, recklessness, and carelessness of the Defendants, acting as aforesaid, consisted of the following:

    a.   failing to have adequate staffing levels on the property;

b.   failing to properly train and/or supervise employees in the practice of proper patient care;

c.   failing to hire competent employees to properly care for patients;

d.   failing to have proper equipment, supplies and devices available to staff for patient care;

e.   failing to develop and enforce proper policies, practices and procedures;

f.   failing to train staff on policies, practices and procedures;

g.   allowing their servants and/or employees care to fall outside acceptable professional and health care safety standards and practices;

h.   failing to monitor the physical health of the plaintiff;

i.   failing to inspect the body of the plaintiff at reasonable intervals to properly monitor her condition;

j.   failing to perform skin checks and assess skin integrity;

k.   inaccurately assessing her risk for skin breakdown;

l.   failing to complete wound treatment as ordered;

m.  failing to seek wound care orders;

n.   failing to turn and reposition as needed;

o.   failing to document interventions necessary to ensure quality care;

p.   failing to keep Plaintiff clean and dry;

q.   failing to implement interventions to prevent new and worsening pressure ulcers, including timely repositioning and offloading, ensuring placement and functioning of low air loss mattress and/or pressure reducing mattress, wedge, chair cushion,

boots and creams/ointments and supplementing protein, calories, vitamins and minerals for healing;

r.  failing to monitor plaintiff to prevent, assess and treat pressure ulcers and wounds on her body;

s.  failing to timely refer Plaintiff to a wound care doctor, wound ostomy nurse, vascular specialist and/or other appropriate specialist;

t.  failing to perform accurate Braden Risk Assessment;

u.  failing to timely update Plaintiff's care plan;

v.  failing to properly and timely document Plaintiff's chart;

w.  failing to complete incident reports;

x.  failing to notify plaintiff's family member of the development of wounds;

y.  failing to follow orders;

z.  failing to conduct proper testing and assessment of Plaintiff's physicality to prevent infections and/or other complications;

aa. failing to prevent and identify infections and treat Plaintiff with IV, antibiotics and/or other medical measures to cure and/or alleviate signs of infection, and/or other complications;

bb. failing to seek and ensure adequate nutritional intake to meet Plaintiff's needs for optimal health;

cc. failing to properly care for plaintiff's foley catheter and failure to provide appropriate incontinent care;

dd. failing to seek and implement multivitamin recommendation in a timely manner;

ee. failing to seek and implement registered dietician recommendations in a timely manner;

ff. failing to update the physician with change in condition;

gg. failing to identify, treat and prevent infections, including sepsis and urinary tract infection;

hh. failing to order and obtain bloodwork;

ii. ignoring requests from Plaintiff and Plaintiff's family for proper and timely treatment;

jj. failing to transfer Plaintiff to the hospital sooner;

39.    The negligence, carelessness, and recklessness of Defendants , through its agents, servants and/or nurses and/or employees as stated above, cause and/or increased the risk and was a factor in causing harm and injuries to Plaintiff.

40.    As a result of the negligence, carelessness and recklessness of Defendants , Plaintiff has suffered injuries which are or may be serious and permanent in nature, including, but not limited to: pressure injuries and/or wounds, including an ***infected and necrotic stage IV sacral pressure ulcer extending down to the bone,*** sepsis, infection, necrotizing fasciitis, pain and suffering and ***death***.

41.    As a result of the negligence, carelessness and recklessness of Defendants, Plaintiff was required to receive and undergo unnecessary medical attention and care and to expend various sums of money and to incur various expenses that she was forced to endure in connection with the additional procedures.

42.    As a result of the negligence, carelessness and recklessness of Defendants , Plaintiff, suffered medically determinable physical and/or mental impairment, which prevented

Plaintiff from performing all or substantially all of the material acts and duties that constituted the plaintiff's usual and customary activities prior to the incident.

43.    The negligence, carelessness and recklessness of Defendants , Plaintiff incurred other financial expenses, which exceeded amounts which plaintiff may otherwise be entitled to recover.

44.    The negligence, carelessness and recklessness of Defendants , Plaintiff suffered severe physical pain, mental anguish and humiliation.

**WHEREFORE,** Plaintiff, demands judgment against the Defendants, jointly and/or severally, for damages, in an amount in excess of the arbitration limits, together with punitive damages, plus interest and costs.

<u>**COUNT II**</u>
<u>**PLAINTIFF V. DEFENDANT AHG**</u>
<u>**PROFESSIONAL NEGLIGENCE**</u>

45.    Plaintiff incorporates by reference hereto, all of the allegations contained in the General Averments  and preceding Counts as if they were set forth at length herein.

46.    The negligence, recklessness, and carelessness of the Defendants, acting as aforesaid, consisted of the following:

   a.   failing to have adequate staffing levels on the property;

   b.   failing to properly train and/or supervise employees in the practice of proper patient care;

   c.   failing to hire competent employees to properly care for patients;

   d.   failing to have proper equipment, supplies and devices available to staff for patient care;

   e.   failing to develop and enforce proper policies, practices and procedures;

f.   failing to train staff on policies, practices and procedures;

g.   allowing their servants and/or employees care to fall outside acceptable professional and health care safety standards and practices;

h.   failing to monitor the physical health of the plaintiff;

i.   failing to inspect the body of the plaintiff at reasonable intervals to properly monitor her condition;

j.   failing to perform skin checks and assess skin integrity;

k.   inaccurately assessing her risk for skin breakdown;

l.   failing to complete wound treatment as ordered;

m.   failing to seek wound care orders;

n.   failing to turn and reposition as needed;

o.   failing to document interventions necessary to ensure quality care;

p.   failing to keep Plaintiff clean and dry;

q.   failing to implement interventions to prevent new and worsening pressure ulcers, including timely repositioning and offloading, ensuring placement and functioning of low air loss mattress and/or pressure reducing mattress, wedge, chair cushion, boots and creams/ointments and supplementing protein, calories, vitamins and minerals for healing;

r.   failing to monitor plaintiff to prevent, assess and treat pressure ulcers and wounds on her body;

s.   failing to timely refer Plaintiff to a wound care doctor, wound ostomy nurse, vascular specialist and/or other appropriate specialist;

t.   failing to perform accurate Braden Risk Assessment;

u.  failing to timely update Plaintiff's care plan;

v.  failing to properly and timely document Plaintiff's chart;

w.  failing to complete incident reports;

x.  failing to notify plaintiff's family member of the development of wounds;

y.  failing to follow orders;

z.  failing to conduct proper testing and assessment of Plaintiff's physicality to prevent infections and/or other complications;

aa. failing to prevent and identify infections and treat Plaintiff with IV, antibiotics and/or other medical measures to cure and/or alleviate signs of infection, and/or other complications;

bb. failing to seek and ensure adequate nutritional intake to meet Plaintiff's needs for optimal health;

cc. failing to properly care for plaintiff's foley catheter and failure to provide appropriate incontinent care;

dd. failing to seek and implement multivitamin recommendation in a timely manner;

ee. failing to seek and implement registered dietician recommendations in a timely manner;

ff. failing to update the physician with change in condition;

gg. failing to identify, treat and prevent infections, including sepsis and urinary tract infection;

hh. failing to order and obtain bloodwork;

ii. ignoring requests from Plaintiff and Plaintiff's family for proper and timely treatment;

jj.  failing to transfer Plaintiff to the hospital sooner;

48.     The negligence, carelessness, and recklessness of Defendants , through its agents, servants and/or nurses and/or employees as stated above, cause and/or increased the risk and was a factor in causing harm and injuries to Plaintiff.

49.     As a result of the negligence, carelessness and recklessness of Defendants, Plaintiff has suffered injuries which are or may be serious and permanent in nature, including, but not limited to: pressure injuries and/or wounds, including an ***infected and necrotic stage IV sacral pressure ulcer extending down to the bone,*** sepsis, infection, necrotizing fasciitis, pain and suffering and ***death***.

50.     As a result of the negligence, carelessness and recklessness of Defendants, Plaintiff was required to receive and undergo unnecessary medical attention and care and to expend various sums of money and to incur various expenses that she was forced to endure in connection with the additional procedures.

51.     As a result of the negligence, carelessness and recklessness of Defendants , Plaintiff, suffered medically determinable physical and/or mental impairment, which prevented Plaintiff from performing all or substantially all of the material acts and duties that constituted the plaintiff's usual and customary activities prior to the incident.

52.     The negligence, carelessness and recklessness of Defendants , Plaintiff incurred other financial expenses, which exceeded amounts which plaintiff may otherwise be entitled to recover.

53.     The negligence, carelessness and recklessness of Defendants , Plaintiff suffered severe physical pain, mental anguish and humiliation.

**WHEREFORE,** Plaintiff, demands judgment against the Defendants, jointly and/or

severally, for damages, in an amount in excess of the arbitration limits, together with punitive

damages, plus interest and costs.

## COUNT III
## PLAINTIFF V. DEFENDANT CCP
## PROFESSIONAL NEGLIGENCE

54.    Plaintiff incorporates by reference hereto, all of the allegations contained in the

General Averments and preceding Counts as if they were set forth at length herein.

55.    The negligence, recklessness, and carelessness of the Defendants , acting as

aforesaid, consisted of the following:

    a.   failing to have adequate staffing levels on the property;

    b.   failing to properly train and/or supervise employees in the practice of proper patient

       care;

    c.   failing to hire competent employees to properly care for patients;

    d.   failing to have proper equipment, supplies and devices available to staff for patient

       care;

    e.   failing to develop and enforce proper policies, practices and procedures;

    f.   failing to train staff on policies, practices and procedures;

    g.   allowing their servants and/or employees care to fall outside acceptable

       professional and health care safety standards and practices;

    h.   failing to monitor the physical health of the plaintiff;

    i.   failing to inspect the body of the plaintiff at reasonable intervals to properly monitor

       her condition;

    j.   failing to perform skin checks and assess skin integrity;

    k.   inaccurately assessing her risk for skin breakdown;

l.   failing to complete wound treatment as ordered;

m.   failing to seek wound care orders;

n.   failing to turn and reposition as needed;

o.   failing to document interventions necessary to ensure quality care;

p.   failing to keep Plaintiff clean and dry;

q.   failing to implement interventions to prevent new and worsening pressure ulcers, including timely repositioning and offloading, ensuring placement and functioning of low air loss mattress and/or pressure reducing mattress, wedge, chair cushion, boots and creams/ointments and supplementing protein, calories, vitamins and minerals for healing;

r.   failing to monitor plaintiff to prevent, assess and treat pressure ulcers and wounds on her body;

s.   failing to timely refer Plaintiff to a wound care doctor, wound ostomy nurse, vascular specialist and/or other appropriate specialist;

t.   failing to perform accurate Braden Risk Assessment;

u.   failing to timely update Plaintiff's care plan;

v.   failing to properly and timely document Plaintiff's chart;

w.   failing to complete incident reports;

x.   failing to notify plaintiff's family member of the development of wounds;

y.   failing to follow orders;

z.   failing to conduct proper testing and assessment of Plaintiff's physicality to prevent infections and/or other complications;

aa. failing to prevent and identify infections and treat Plaintiff with IV, antibiotics and/or other medical measures to cure and/or alleviate signs of infection, and/or other complications;

bb. failing to seek and ensure adequate nutritional intake to meet Plaintiff's needs for optimal health;

cc. failing to properly care for plaintiff's foley catheter and failure to provide appropriate incontinent care;

dd. failing to seek and implement multivitamin recommendation in a timely manner;

ee. failing to seek and implement registered dietician recommendations in a timely manner;

ff. failing to update the physician with change in condition;

gg. failing to identify, treat and prevent infections,  including sepsis and urinary tract infection;

hh. failing to order and obtain bloodwork;

ii. ignoring requests from Plaintiff and Plaintiff's family for proper and timely treatment;

jj. failing to transfer Plaintiff to the hospital sooner;

55. The negligence, carelessness, and recklessness of Defendants, through its agents, servants and/or nurses and/or employees as stated above, cause and/or increased the risk and was a factor in causing harm and injuries to Plaintiff.

56.    As a result of the negligence, carelessness and recklessness of Defendants , Plaintiff has suffered injuries which are or may be serious and permanent in nature, including, but not limited to: pressure injuries and/or wounds, including an ***infected and necrotic stage IV***

***sacral pressure ulcer extending down to the bone,*** sepsis, infection, necrotizing fasciitis, pain and suffering and ***death***.

57.     As a result of the negligence, carelessness and recklessness of Defendants, Plaintiff was required to receive and undergo unnecessary medical attention and care and to expend various sums of money and to incur various expenses that she was forced to endure in connection with the additional procedures.

58.     As a result of the negligence, carelessness and recklessness of Defendants, Plaintiff, suffered medically determinable physical and/or mental impairment, which prevented Plaintiff from performing all or substantially all of the material acts and duties that constituted the plaintiff's usual and customary activities prior to the incident.

59.     The negligence, carelessness and recklessness of Defendants , Plaintiff incurred other financial expenses, which exceeded amounts which plaintiff may otherwise be entitled to recover.

60.     The negligence, carelessness and recklessness of Defendants , Plaintiff suffered severe physical pain, mental anguish and humiliation.

**WHEREFORE,** Plaintiff, demands judgment against the Defendants, jointly and/or severally, for damages, in an amount in excess of the arbitration limits, together with punitive damages, plus interest and costs.

<u>**COUNT IV**</u>
<u>**PLAINTIFF V. DEFENDANT  KAZSIRER**</u>
<u>**PROFESSIONAL NEGLIGENCE**</u>

61.     Plaintiff incorporates by reference hereto, all of the allegations contained in the General Averments and preceding Counts as if they were set forth at length herein.

62.     The negligence, recklessness, and carelessness of the Defendants , acting as

aforesaid, consisted of the following:

    a.  failing to ensure adequate staffing levels on the property of the Facility;

    b.  failing to properly train and/or supervise employees in the practice of proper patient care;

    c.  failing to hire competent employees to properly care for patients;

    d.  failing to have proper equipment, supplies and devices available to staff for patient care;

    e.  failing to develop and enforce proper policies, practices and procedures;

    f.  failing to train staff on policies, practices and procedures;

    g.  Withholding contributions necessary to run the Facility;

    h.  taking distributions that drained all of the money from the defendants and the Facility such that the result was the Facility had no money to operate, the "skilled" nursing care was poor and the patients, including Plaintiff, were harmed and died.

    i.  failing to maintain a safe environment;

    j.  negligently overseeing and maintaining finances necessary to the operation of the facility;

    k.  allowing their servants and/or employees care to fall outside acceptable professional and health care safety standards and practices;

63.    The negligence, carelessness, and recklessness of Defendants , through its agents, servants and/or nurses and/or employees as stated above, caused and/or increased the risk and was a factor in causing harm and injuries to Plaintiff.

64.    As a result of the negligence, carelessness and recklessness of Defendants , Plaintiff has suffered injuries which are or may be serious and permanent in nature, including,

but not limited to: pressure injuries and/or wounds, including an ***infected and necrotic stage IV sacral pressure ulcer extending down to the bone,*** sepsis, infection, necrotizing fasciitis, pain and suffering and ***death***.

65.     As a result of the negligence, carelessness and recklessness of Defendants, Plaintiff was required to receive and undergo unnecessary medical attention and care and to expend various sums of money and to incur various expenses that she was forced to endure in connection with the additional procedures.

66.     As a result of the negligence, carelessness and recklessness of Defendants , Plaintiff, suffered medically determinable physical and/or mental impairment, which prevented Plaintiff from performing all or substantially all of the material acts and duties that constituted the plaintiff's usual and customary activities prior to the incident.

67.     The negligence, carelessness and recklessness of Defendants , Plaintiff incurred other financial expenses, which exceeded amounts which plaintiff may otherwise be entitled to recover.

68.     The negligence, carelessness and recklessness of Defendants , Plaintiff suffered severe physical pain, mental anguish and humiliation.

**WHEREFORE,** Plaintiff, demands judgment against the Defendants, jointly and/or severally, for damages, in an amount in excess of the arbitration limits, together with punitive damages, plus interest and costs.

<u>**COUNT V**</u>
<u>**PLAINTIFF v. ALL DEFENDANTS**</u>
<u>**WRONGFUL DEATH ACTION**</u>

69.     Plaintiff incorporates by reference hereto, all of the allegations contained in the

General Averments and preceding Counts as if they were set forth at length herein.

70.     Plaintiff brings this action on behalf of the wrongful death beneficiaries.

71.     The Plaintiff brings this action pursuant to the Pennsylvania Wrongful Death Act, 42 Pa.Cons. Stat. §8301 and Pa. R.C.P. No. §2202(a).

72.     Plaintiff is survived by her parents and/or children who are entitled to recover damages, and it is on their behalf that this action is being brought:

73.     As a direct and proximate result of the aforesaid negligence of Defendants, Plaintiff's beneficiaries have suffered, and Defendant is liable for the following damages:

        a.      medical, funeral and burial expenses of Plaintiff;

        b.      expenses of administration related to Plaintiff's injuries;

        c.      the Plaintiff's loss of the support, comfort, counsel, aid, association, care, friendship, guidance, love, affection and services of Plaintiff;

        d.      the Plaintiff's loss of contributions it would have received from the time of the Plaintiff's death until today; and

        e.      such other damages as are permissible in a wrongful death action.

        **WHEREFORE,** Plaintiff, demands judgment against the Defendants, jointly and/or severally, for damages, in an amount in excess of the arbitration limits, together with punitive damages, plus interest and costs.

### COUNT IV
### PLAINTIFF v. DEFENDANT
### SURVIVAL ACTION

74.     Plaintiff incorporates by reference hereto, all of the allegations contained in the General Averments and preceding Counts as if they were set forth at length herein.

75.     Plaintiff brings this survival action on behalf of the estate of the Ms. Johnson pursuant to 42 Pa. Cons. Stat. §8302 and 20 Pa.C.S.A. 3373.

76.     As a direct and proximate result of Defendant's aforesaid acts of negligence, Defendant is liable to Plaintiff's estate for the following damages:

      a.     Plaintiff's pain, suffering, and mental anguish between the time of her injuries and the time of her death;

      b.     Plaintiff's loss of retirement and social security income;

      c.     Plaintiff's other financial losses suffered as a result of her death;

      d.     Plaintiff's loss of enjoyment of life; and

      e.     such other damages as are permissible in a Survival Action.

**WHEREFORE,** Plaintiff, demands judgment against the Defendants, jointly and/or severally, for damages, in an amount in excess of the arbitration limits, together with punitive damages, plus interest and costs.

BY: ***/s/ Leonard Haberman***
   Leonard P. Haberman, Esquire
   *Attorney for Plaintiff*
   HABERMAN LAW, P.C.
   Identification No.: 80446
   1800 JFK Boulevard, Suite 1500-B
   Philadelphia, PA 19103
   (P) 215-454-6904 (F) 215-689-2932
   Lenhaberman@me.com


BY: ***/s/ Carolyn Hahn***
   Carolyn Hahn, Esquire
   *Attorney for Plaintiff*
   HABERMAN LAW, P.C.
   Identification No.: 310540
   1800 JFK Boulevard, Suite 1500-B
   Philadelphia, PA 19103
   (P) 215-454-6904 (F) 215-689-2932
   carolyn@haberman.law

Date: 8/1/25